UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
NICHOLAS EDWIN WILLIAMS,

                                                    Plaintiff,        18-CV-1027
      v.                                                             DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                                    Defendant.

## INTRODUCTION

On September 9, 2015, Plaintiff protectively filed an application for disability insurance benefits ("DIB") alleging disability beginning on December 9, 2014. Tr.[1] 174-75. After the application was denied, Plaintiff timely requested a hearing. Tr. 111-12. On December 15, 2017, Plaintiff appeared with his counsel, Jennifer Dillon, Esq., and testified at a hearing before Administrative Law Judge Mary Mattimore ("the ALJ"). Tr. 45-97. Linda A. Stein, the Vocational Expert ("VE"), also testified at the hearing. Tr. 86-96. The ALJ issued an unfavorable decision on February 21, 2018. Tr. 25-44. Plaintiff then timely requested review by the Appeals Council, and, on July 20, 2018, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner of Social Security ("the Commissioner"). Tr. 1-7. Plaintiff subsequently filed this lawsuit pursuant to Title II of the Social Security Act (the "SSA") seeking review of the final decision of the Commissioner denying his application for DIB.[2] ECF No. 1.

Presently before the Court are the parties' competing motions for judgment on the pleadings. ECF Nos. 8, 10. For the reasons that follow, Plaintiff's motion for judgment on the pleadings (ECF No. 8) is GRANTED, the Commissioner's motion (ECF No. 10) is DENIED, and

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 7.

[2] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g); 1383(c)(3).

1

the matter is REMANDED for further administrative proceedings consistent with this Decision and Order.

## LEGAL STANDARD

### I. District Court Review

The scope of this Court's review of the ALJ's decision denying benefits to Plaintiff is limited. It is not the function of the Court to determine *de novo* whether Plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it

imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

**I.      The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits under the process described above. The ALJ found that Plaintiff met the insured status requirement of the SSA through December 31, 2019. Tr. 30. At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 9, 2014, the alleged onset date. *Id*. At step two, the ALJ found that Plaintiff suffered from several severe impairments: obsessive compulsive disorder (OCD) with panic attacks, major depressive disorder without psychotic features, anxiety disorder, dysthymic disease, cardiomyopathy, major joint dysfunction, bilateral ulnar release with residual symptoms, and obesity. Tr. 30-31. The ALJ determined that Plaintiff's hypertension and sleep apnea were non-severe impairments. Tr. 31.

The ALJ proceeded to the third step of the analysis and found that the severity of Plaintiff's impairments did not meet or equal the criteria of any listing. Tr. 31-34. He then determined that Plaintiff retained the RFC to perform medium work with frequent kneeling, squatting, fingering, handling, and feeling, and sitting/standing every hour while remaining on task. Tr. 34. The ALJ also determined that Plaintiff can perform simple, routine tasks and make simple workplace decisions, tolerate occasional interaction with supervisors, coworkers, and the public, tolerate minimal changes in work procedures, and maintain attention and concentration for two-hour blocks of time. The ALJ further found that Plaintiff cannot perform tandem or teamwork, or production rate (assembly line) pace work. *Id*. At step four of the analysis, the ALJ found that Plaintiff could not perform his past relevant work. Tr. 39. The ALJ then proceeded to step five, where he determined that there were jobs in the national economy that a person of Plaintiff's age,

4

education and work experience could perform, such as a linen room attendant, and a grinding and polishing laborer. Tr. 40.  Accordingly, the ALJ concluded that Plaintiff was not disabled.

**II.     Analysis**

Plaintiff argues that remand is warranted because the ALJ's mental RFC findings were not supported by substantial evidence because the ALJ erred in recognizing that Plaintiff was unable to perform the demands of unskilled work on a regular and continuing basis. ECF No. 8 at 20-25. Because the Court agrees and remands this matter for further proceedings, it need not reach decision on Plaintiff's remaining arguments.

<u>Plaintiff's Mental RFC</u>

An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (S.S.A. July 2, 1996)).  "The work functions likely to be limited depend on many factors, including the particular limitations and symptoms caused by the claimant's medically determinable impairments." *Lowe v. Colvin*, No. 6:15-cv-06077(MAT), 2016 WL 624922, at *5 (W.D.N.Y. Feb. 17, 2016).

It is well-settled that when making an RFC assessment, an ALJ must consider all the relevant evidence, including medical opinions and facts, claimant's physical and mental abilities, non-severe impairments, and subjective evidence of symptoms that could interfere with work activities on a regular and continuing basis.  20 C.F.R. §§ 404.1545(a)-(e); *see also Ferraris v. Heckler*, 728 F.2d 582, 585 (2d Cir. 1984).  The ALJ is required to consider medical opinions in his RFC assessment because they reflect judgments about the nature and severity of the claimant's impairments, and explain what the claimant can still do despite those impairments.   20 C.F.R. § 404.1527(a); *see also Lowe*, 2016 WL 624922, at *5 ("RFC is a medical assessment; therefore,

the ALJ is precluded from making his assessment without some expert medical testimony or other medical evidence to support his decision.") (citations omitted). Generally, the ALJ must defer to an opinion of a claimant's treating physician when formulating the claimant's RFC. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal and other citations omitted). The medical opinion of the claimant's treating physician is entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(a)(2), (c)(2); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citations omitted). If the ALJ determines that the opinion of a treating physician is not entitled to controlling weight, she must decide how much weight, if any, to give the opinion and must comprehensively articulate her reasons for the weight assigned to it. *Halloran,* 362 F.3d at 32 (citations omitted). The ALJ's "[f]ailure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted).

> Here, in formulating Plaintiff's mental RFC, the ALJ determined that Plaintiff
>
> can perform low stress job defined as able to perform simple, routine tasks and make simple, workplace decisions; can tolerate occasional interaction with supervisors, coworkers and the public; cannot perform tandem or team work; can tolerate minimal changes in work procedures; cannot perform production rate (assembly line) pace work; [and] can maintain attention and concentration for 2 hour blocks of time.

Tr. 34.

It has been well-recognized that where a claimant suffers from mental impairments that prevent him or her from meeting the demands of past relevant work, the ALJ is required to consider whether the claimant can perform unskilled work, and consider the basic mental demands of unskilled work, which "include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work

6

situations; and to deal with changes in a routine work setting." *See* SSR 85-15, 1985 WL 56857, *5 (S.S.A. Jan. 1, 1985). Because a mentally-impaired individual may have difficulties adapting to the "demands or 'stress' of the workplace," and "may have difficulty meeting the requirements of even so-called 'low-stress' jobs," the ALJ is required to make a thorough, individualized assessment of the individual's ability "to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." *Id.* at * 5, 6; *see also Collins v. Colvin*, 15-CV-423-FPG, 2016 WL 5529424, at *3 (W.D.N.Y. Sep. 30, 2016).

      Here, the Court finds that the ALJ's determination of Plaintiff's ability to perform simple and routine tasks with additional mental non-exertional limitations was not supported by substantial evidence. Specifically, the record contains two opinions of Dr. Ashton, Plaintiff's primary treating psychiatrist, who assessed Plaintiff's work-related abilities with the benefit of having observed him during his seven-year treatment relationship. As a result of his relationship, Dr. Ashton issued two opinions that demonstrate Plaintiff's inability to perform unskilled work on an ongoing and sustained basis. Dr. Ashton opined that Plaintiff's mental abilities were either "fair," meaning that he had a substantial loss of his abilities, or "poor/none," indicating a complete loss of abilities to perform an activity in regular, competitive employment and in a sheltered work setting. Tr. 395-97, 705-08. Notably, the assessment forms provided for two other categories, *i.e.* "unlimited" and "good," under which Plaintiff's mental abilities could possibly be considered. However, Dr. Ashton characterized none of Plaintiff's mental limitations in either of these categories. *Id.* Instead, he determined that due to Plaintiff's intrusive obsessive thoughts that led to anxiety, compulsive behavior, and depression, Plaintiff had a complete loss of ability to complete a normal workday without interruptions from his symptoms, perform at a consistent pace

without an unreasonable number of lengths or rest periods, maintain regular attendance, work in coordination with or proximity to others, make simple work-related decisions, and get along with coworkers or peers.  Tr. 396, 706-07.  As for Plaintiff's ability to respond appropriately to criticism from supervisors, Dr. Ashton rated them as either "fair" or "poor/none."[3]  *Id*.

In light of these findings, it is unclear how the ALJ determined that Plaintiff was able to perform any work on a regular and continuous basis regardless of how simple or routine Plaintiff's tasks would have been, let alone now that he could tolerate occasional interaction with supervisors, coworkers, and the public.  Because "an individual who cannot tolerate being supervised may not be able to work even in the absence of close supervision; the *knowledge* that one's work is being judged and evaluated, even when the supervision is remote or indirect, can be intolerable for some mentally impaired persons." *See* SSR 85-15, 1985 WL 56857, at *5.  It is also unclear how even the occasional interaction with supervisors could accommodate Plaintiff's inability to respond appropriately to criticism as identified by Dr. Ashton.  Similarly, the Court is not sure how the ALJ arrived at the conclusion that Plaintiff could maintain attention and concentration for two-hour blocks of time when Dr. Ashton opined that Plaintiff had *no ability* to maintain attention for two hours.  Tr. 395.  While the Court recognizes that an RFC assessment may not perfectly correspond to a medical opinion, and the ALJ is entitled to weigh all of the evidence in the record to make the RFC finding, *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013) (summary order), here, the ALJ's determination of whether Plaintiff was able to complete a normal workday without interruptions from his symptoms is not based on any opinion contained in the record, and, instead, was based on his own interpretation of the record.  This is particularly important in light of the

---

[3] The two options differed only slightly in Dr. Ashton's determination of some of Plaintiff's mental abilities. For instance, the February 2017 opinion identified Plaintiff's abilities to make simple decisions and work in coordination with others as "fair," while in the November 2017 opinion Dr. Ashton listed as "poor/ none." Tr. 396, 706-07.

8

VE's testimony that even an occasional inability to complete a normal workday would preclude gainful employment. Tr. 93. Here, the ALJ simply discounted Dr. Ashton's findings and formulated Plaintiff's RFC without providing an individualized assessment of Plaintiff's abilities to meet the demands of unskilled work, *i.e.* his abilities to understand and remember simple instructions, respond appropriately to supervision and coworkers, deal with changes in a routine work setting, and adapt to the other demands of the workplace in light of Dr. Ashton's opinions.

Instead, the ALJ relied on generally normal Plaintiff's mental health examinations, which, according to the ALJ, demonstrated that Plaintiff had no more than mild symptoms, which could not have led to the level of limitations identified by Dr. Ashton. Tr. 36, 38. However, the record demonstrates that Plaintiff's mental limitations were far from being mild. In fact, Plaintiff continuously sought treatment from Dr. Ashton for seven years from 2010 through at least May 2018. Tr. 19, 375-93, 435-46, 594-705. Even though Plaintiff often appeared alert, oriented, cooperative, and even reported the lessening of some of his symptoms on some occasions, the fluctuation of his symptoms warranted Dr. Ashton's continuous treatment and management of Plaintiff's multiple psychotropic medications. Despite his regular treatment, Dr. Ashton repeatedly noted Plaintiff's compulsive and hoarding behaviors, panic attacks, depression, chronically impaired mood, intrusive obsessive thoughts, loss of interest, self-loathing, paranoia, and increased anxiety, all of which led to Dr. Ashton's diagnosis of Plaintiff with (OCD), dysthymic disorder, major recurrent severe depressive disorder with psychotic symptoms, panic disorder, and generalized anxiety disorder. *Id*.

Dr. Ashton's findings, particularly those related to Plaintiff's inability to complete a normal workday, respond to changes in a work setting, and tolerate even occasional interaction with supervisors and coworkers, were supported by opinions of the other medical providers contained

9

in the record.  In fact, Plaintiff's long-term treating therapist, Irma Ruth, LCSW, completed a medical source statement, in which she opined that Plaintiff had a complete loss of ability to complete a normal workday without interruptions from his symptoms, make simple work-related decisions, accept instructions and respond appropriately to criticism from supervisors, or respond appropriately to changes in a routine work setting.  Tr.  711.

The ALJ erred in discounting Dr. Ashton and Ms. Ruth's findings because they lacked proper clinical foundation and did not "provide objective support for the level of impairment."  Tr. 38.  First, "[t]he Commissioner's regulations do not require that a psychiatric opinion be supported by more than a mental status examination and psychiatric history."  *Harris v. Colvin*, 149 F. Supp. 3d 435, 446 (W.D.N.Y. 2016) (internal citations omitted).  Moreover,

> where a claimant alleges a disability primarily based on a mental impairment, the treating psychiatrist's opinion may be more significant and relevant than psychological testing [because an] opinion based on medical evidence derived from a treatment relationship consisting of face to face visits is . . . inherently more reliable than an opinion based on a cold record because observation of the patient is critical to understanding the subjective nature of the patient's disease and in making a reasoned diagnosis.

*Id*. (internal citations omitted).  It should be noted that if the ALJ had concerns about the nature of Plaintiff's restrictions stemming from opinions of both primary mental health providers, he was obligated to follow-up with them first instead of dismissing their opinions as baseless.  *See Lopez-Tiru v. Astrue*, No. 09-CV-1638 (ARR), 2011 WL 1748515, at *4 (May 5, 2011) ("When a treating physician's opinion 'is not adequately supported by clinical findings, the ALJ must attempt, *sua sponte*, to develop the record further by contacting the treating physician to determine whether the required information is available.'") (internal citations omitted).

Additionally, the ALJ's mental RFC assessment goes against the results of a psychiatric evaluation performed by Dr. Ippolito on behalf of the Commissioner, particularly her findings

discussing Plaintiff's ability to relate with others, maintain attention and concentration, and deal with stress. Tr. 370-74.  Similar to Dr. Ashton and Ms. Ruth, Dr. Ippolito diagnosed Plaintiff with OCD with panic attacks and major recurrent severe depressive disorder without psychotic features, and opined that Plaintiff had *marked* limitations in the ability to adequately relate with others and appropriately deal with stress, and *moderate* limitations in his ability to maintain attention and concentration.  *Id*. (emphasis added).  Given the severity of Plaintiff's symptoms, Dr. Ippolito considered his prognosis to be fair to guarded.  Tr. 374.  However, the ALJ discounted this opinion as being insufficiently explained instead of making specific findings about how Plaintiff's marked limitations impacted his ability to perform basic demands of unskilled work and how even an occasional interaction with supervisors, coworkers, and the public could potentially trigger Plaintiff's symptoms.  *Cooley v. Berryhill*, 6:16-CV-06301-EAW, 2017 WL 3236446, at *12 (W.D.N.Y. July 31, 2017) (it was insufficient to limit Plaintiff to simple, routine, repetitive tasks with no interaction with the public, and occasional interaction with supervisors and coworkers without expressly analyzing Plaintiff's ability to manage stress of the workplace) .

Additionally, the Court finds that the lack of psychiatric hospitalizations, suicidal plans, or hallucinations, as well as Plaintiff's ability to maintain a family relationship – reasons cited by the ALJ to discount Dr. Ippolito's opinion – are not compelling.  A claimant's ability to function on a daily basis in a restrictive and isolated setting has been found to be insufficient to determine the claimant's employability because "the pertinent question is whether [claimant's] psychiatric issues will interfere with [his] ability to function on a daily basis when faced with the normal stressors that arise in a typical competitive workplace environment." *Thomas v. Colvin*, No. 6:15-cv-06629(MAT), 2016 WL 6993384, at *5 (W.D.N.Y. Nov. 30, 2016).  Also, courts in this Circuit have repeatedly recognized that "[a] claimant's participation in the activities of daily living will

11

not rebut his or her subjective statements of pain or impairment unless there is proof that the claimant engaged in those activities for sustained periods of time . . ." *Polidoro v. Apfel*, No. 98 CIV.2071(RPP), 1999 WL 203350, at *8 (S.D.N.Y. Apr. 12, 1999) ("A claimant need not be an invalid, incapable of performing any daily activities, in order to receive benefits under the SSA.").

Here, there was nothing inherent in Plaintiff's daily activities to suggest that he was able to perform the basic demands of competitive unskilled work. Moreover, his ability to maintain a family relationship can hardly support a claim that he was capable of interacting with supervisors, coworkers, or the public in a work setting on a regular and continuing basis. Plaintiff testified that did not have any friends, and the only social activity he did outside of his home was going to church and breakfast with his parents and brother. Tr. 81, 82. During those interactions Plaintiff typically sat quietly without saying anything while being preoccupied with his thoughts. Tr. 71-72. Plaintiff's wife testified that at least several days per week Plaintiff would go all day without speaking with her. Tr. 83. Plaintiff testified that he could not concentrate to perform one task, and because of his racing depressive thoughts, he would forget how to do a task while performing it. Tr. 68. He could not follow church services or enjoy hobbies that required maintaining a certain level of attention and concentration such as building model rockets, reading, watching TV, or fishing. Plaintiff could not go anywhere without his wife and required her assistance with all the household tasks. Tr. 80-83. Even simple household chores such as laundry, which Plaintiff liked to do in the past, became problematic for him to perform and required his wife's help. Tr. 59, 67. To calm himself down, Plaintiff repetitively, often over 50 times per day, washed his hands, and continuously checked if his doors were locked, or if the TV was off. Tr. 72-73.

The ALJ's great reliance on the opinion of the non-treating and non-examining consultative physician Dr. Bruno to determine that Plaintiff was able to perform low stress jobs with additional

limitations was inappropriate. Tr. 37-38.  First, affording great weight to Dr. Bruno's opinion was improper because it has been long-recognized that "[i]n the context of a psychiatric disability diagnosis, it is improper [for the ALJ] to rely on the opinion of a non-treating, non-examining doctor because the inherent subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to personally observe the patient." *Velazquez v. Barnhart*, 518 F. Supp. 2d 520, 524 (W.D.N.Y. 2007) (remand required where ALJ credited a psychiatric opinion "based on a review of a cold, medical record"); *see also Vargas v. Sullivan*, 898 F.2d 293, 295 (2d Cir. 1990) ("The general rule is that the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability.").  Dr. Bruno opined that Plaintiff was moderately limited in his ability to perform unskilled work, particularly in his ability to maintain attention and concentration for extended periods of time, work in coordination and proximity to others, complete a normal workday, accept instructions and respond to criticism from supervisors, get along with coworkers, and respond appropriately to changes in the work setting. Tr. 98-109.   While the Court recognizes that moderate limitations in work-related functions do not necessarily prevent a claimant from performing unskilled simple and repetitive tasks, *see Meyers v. Comm'r of Soc. Sec.*, No. 1:18-CV-1476, 2020 WL 923413, at *5 (W.D.N.Y. Feb. 26, 2020) (collective cases), the ALJ's erred here because he failed to explain how Plaintiff was able to perform simple, routine tasks or unskilled work *despite* his difficulties in completing a normal workday, accepting instructions, responding to criticism, and working in coordination and proximity with others identified by Dr. Bruno.  This error, again, was problematic in light of the VE testimony that the hypothetical individual would not be able to sustain a full-time employment if he was unable to complete a normal workweek without interruption from psychologically based symptoms. Tr. 93.  *See Stellmaszyk v. Berryhill*, 16cv09609 (DF), 2018 WL 4997515, at *28

(S.D.N.Y. Sept. 28, 2018) (remand was warranted when it was unclear how the ALJ incorporated plaintiff's moderate limitations in concentration, attention, and keeping to a schedule into account restricting Plaintiff to simple low stress work with occasional interaction with others).

For the reasons discussed above, the Court finds that the RFC assessment limiting Plaintiff to simple and routine tasks with additional non-exertional limitations is not supported by substantial evidence. Because the Court has determined that remand of this matter for further administrative proceedings is necessary, the Court declines to reach decision on Plaintiff's remaining arguments. *See, e.g.*, *Bell v. Colvin*, 5:15-CV-01160 (LEK), 2016 WL 701739, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, 13cv06844 (LGS) (DF), 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 8) is hereby GRANTED, and the Commissioner's motion for judgment on the pleadings (ECF No. 10) is DENIED. This case is hereby REMANDED to the Commissioner for further proceedings consistent with this order. The Clerk of Court is directed to enter judgment and close the case.

IT IS SO ORDERED.

Dated: August 20, 2020
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court